UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                              Plaintiff,                      **REPORT & RECCOMMENDATION**

       v.                                            18-cv-6384 (WFK) (ST)

B & B IRON WORKS CORPORATION,

                              Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

This case was referred to me for a Report & Recommendation solely on the issue of damages after the Hon. William F. Kuntz, II granted summary judgment to the Plaintiff, finding that it was due unpaid premiums under its insurance agreement with the Defendant. The Plaintiff additionally requested interest on the unpaid premiums as well as attorneys' fees from the Defendant, which Judge Kuntz asked be analyzed in my Report and Recommendation. For the reasons discussed herein, I recommend the Plaintiff be awarded $500,519 in unpaid premiums, as well as prejudgment interest on that award at a rate of 9% per annum from August 21, 2018 until the date of judgment, and that Plaintiff be denied an award of attorneys' fees.

## BACKGROUND

The parties' familiarity with the underlying facts of this action is presumed after Judge Kuntz's thorough Decision & Order. *See* ECF No. 49.

In his opinion grating summary judgment to Plaintiff, Judge Kuntz found there was "no material factual dispute as to whether B&B owes American Empire unpaid premiums pursuant to the Insurance Policy." *Id.* at 8.  He held that, "B&B breached the Insurance Policy and owes American Empire the unpaid premium plus interest…" *Id.*  Judge Kuntz referred the calculation of these damages to me as well as "American Empire's request for attorney's fees and any calculation of such fees if they are found to be warranted" for a Report and Recommendation. *Id.* at 9.

Subsequent to the Decision and Order being issued, I ordered the parties to brief the Court on the remaining damages issues. *See* 1/26/22 Order.  In its brief, Plaintiff argues it is entitled to $500,516 in unpaid premiums based upon the audit conducted by Overland Solutions. *See* Pl. Br., 2-4, ECF No. 51.  In support of that audit's accuracy, Plaintiff cites: (1) the fact the audit says Kristofer Graham, who was B & B's accountant at the time, agreed with its findings; (2) the affidavit of Randy Myers, the Vice President of American Empire's parent company, in which he attests to the $500,516 due; and (3) its expert's report in which he analyzes the audit and finds it accurate. *See* Audit Report, ECF No. 46-5; Audit Endorsement, ECF No. 46-6; Graham Aff., ECF No. 46-7; Myers Aff., ¶¶ 14-16, ECF No. 46-3; Franklin Rep., ECF Nos. 46-12, 13.

In response, Defendant contests "the calculation of damages presented by Plaintiff" and argues that the audit Plaintiff bases damages on "misstates several pertinent facts about the company in its assessment of B&B's gross receipts." Def. Br., 1, ECF No. 53.  However, Defendant only specifically mentions one misstatement in its brief: that the audit said there were no subcontractors during the policy period of May 2, 2017 to May 2, 2018, while B&B's tax return for the year 2017 showed subcontractor expenses in excess of $1,305,585. *Id.;* ECF No.

2

46-26. It brought this alleged inaccuracy to Plaintiff's attention and requested a second audit but no second audit was performed. *Id.* No argument is made in the brief as to why or how this would affect the underlying calculation as to premiums owed. Defendant merely asks that the Court take "under advisement that B&B contends [*sic*] the amount of premiums owed on the policy to American Empire and further take[] under consideration B&B's denied request for a second audit on this matter." *Id.* at 2.

Plaintiff additionally argues it is entitled to prejudgment interest on the damages awarded, pursuant to N.Y. C.P.L.R. § 5001, from August 21, 2018, the date when the audit endorsement advising of the additional amount owed became effective on Defendant's policy, to the date of judgment in this case. Pl. Br., 4. Plaintiff argues the 9% per annum interest rate specified in N.Y. C.P.L.R. § 5004 should apply and it should be awarded $145,629.17 in interest plus $123.41 per day from March 27, 2022 until judgment is entered. *Id.* at 4-5.

Defendant argues that any prejudgment interest should not be calculated from August 21, 2018, and the Court should use its discretion to award interest from a more recent date given that the "litigation in this matter became severely delayed due to the global pandemic…" Def. Br., 3. Plaintiff, in its reply brief, argues that Defendant's contention "should not be countenanced, as this litigation had ensued over eighteen months before the COVID pandemic even began." Pl. Repl. Br., ECF No. 54.

Finally, Plaintiff asks that the Court award attorneys' fees to it in the amount of $125,036.41. Pl. Br., 6. In support of this request it provided the Court with bills and invoices for the time spent on this litigation. *See* ECF No. 52-1. It argues that it is entitled to the attorneys' fees because it incurred the fees in prosecuting an action in which B & B had "no good faith defense." Pl. Br., 6. Defendant meanwhile argues that, under New York law,

3

attorneys' fees are not recoverable for breach of contract actions, that B&B had good faith defenses, and that it did not act in bad faith at any point in the case. Def. Br., 3-5.  It also argues that, should the Court award such fees, it should reduce the amount requested because the invoices and bills show a disproportionate ration of partner to associate time. *Id.* at 5-6.

I will address each of these arguments in turn.

## LEGAL STANDARD

"Insurance policies are contracts and are therefore interpreted according to the rules of contract interpretation." *Frazer Exton Dev., L.P. v. Kemper Env. Ltd.,* 153 F. App'x 31, 32 (2d Cir. 2005).  "To prove general damages under New York law, the plaintiff must show (1) the fact or existence of damages to a "reasonable certainty" and, if the fact or existence of damages is proven, (2) a stable foundation for a reasonable estimate of damages incurred as a result of the breach." *Holland Loader Co. LLC v. FLSmidth A/S,* 769 Fed. Appx. 40, 42 (2d Cir. 2019) (internal quotations omitted) (citing *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,,* 487 F.3d 89, 110 (2d Cir. 2007)).  A damages inquest is not necessary where the damages are liquidated and susceptible to mathematical computation. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

## DISCUSSION

### I.    Plaintiff is Entitled to $500,516 in Unpaid Premiums

This Court has already found B&B breached the insurance policy and owes American Empire unpaid premiums plus interest.  Thus, the existence of damages has already been proven.  The only question left is how much is owed as a result of the breach.  Plaintiff seeks $500,516 in outstanding premiums and must, therefore, show there is a stable foundation for that estimate and that it is reasonable.

4

Plaintiff bases its damage amount upon the audit performed by Overland Solutions and has submitted the audit report to the Court. *See* Audit.

The insurance contract between Plaintiff and Defendant made Defendant responsible for "the payment of all premiums." Policy, 2, ECF No. 46-4. An original $250,000 payment was made as an advanced premium based on a $2 million gross receipt estimate for the policy year. The premium was set at a rate of $125 per $1,000 in gross receipts. *Id.* at 5, 7. In the policy, which Defendant's principal signed, it requires Defendant to pay an additional premium should gross receipts exceed the $2 million estimate and notes that an audit would be conducted to establish actual gross receipts for the policy period. *Id.* at 19, 41. The audit found gross receipts for the policy period were in fact $6,004,128. *See* Audit, ECF No. 46-5. At the agreed upon rate of $125 per $1,000 in gross receipts, that equated to a total premium of $750,516. Policy, 55. Less the $250,000 advance premium already paid, it results in an owed premium of $500,516. *Id.*

"The general rule for measuring damages for breach of contract…is the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Adams v. Lindblad Travel, Inc.* 730 F.2d 89, 92 (2d Cir. 1984). Here, had Defendant fulfilled the contract, it would have paid Plaintiff any outstanding premiums. Therefore, the amount of premiums still owed is the amount to be awarded as damages in this case.

Plaintiff has put forward significant evidence that the audit, as a method of calculating damages, was accurate. First, the audit documents that an exit interview was conducted with Kristofer Graham, the Defendant's accountant, and that he expressed "no concerns" with it. Audit, 5. The audit further notes that "Outside Accountant [] agreed with figures. Attributed

5

variance to underestimation due to the insured being engaged in some large projects in NYC that were not anticipated." *Id.* at 6.

Second, Plaintiff has submitted an expert's report from Richard Franklin, CEO and President of RC Franklin Consulting LLC, in which Mr. Franklin attests to analyzing the audit report and the materials in this case. He found that, "The amount of $6,004,128 is the only verified amount for American Empire's May 2, 2017 annual policy period Gross Receipts, and as a result the sum of $500,516 is due and payable by B&B to American Empire." *See* Franklin Aff. ¶ 8, ECF No. 46-12.[1]

Defendant's only argument that the audit should not be used as a basis for damages is that the audit "misstates several pertinent facts about the company in its assessment of B&B's gross receipts. In several places, the audit states there were no subcontractors during the policy period when B&B had submitted forms showing they had in excess of $1,305,585 in expenses for subcontractors for the year 2017." Def. Br., 1.  In support of this, Defendant points to its tax return for the 2017 tax year, showing an expense of $1,305,585 for subcontractors. *See* 2017 Tax Return, ECF No. 46-26.  However, there are a few problems with Defendant's argument.

First, even granting Defendant that the audit was wrong when it listed no subcontracting expenses for the policy period[2], Defendant has put forward no evidence that this error would affect the audit's finding of the amount of gross receipts, which is what the premium was

---

[1] Defendant does not dispute Franklin's expert status, but I still note that he meets the *Daubert* standard for qualification as an expert.  His testimony is relevant to the question of the accuracy of the audit, his opinions were based upon the audit and the other materials in the summary judgment record, he has worked extensively in the insurance industry since 1970, and his analysis of the audit is reliably based upon that experience. *See* F.R.E. R. 702; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993); *Amorgianos v. Amtrak,* 303 F.3d 256, 265-69 (2d Cir. 2002).

[2] It should be noted there is no evidence that B&B's 2017 tax year and the policy period perfectly line up. That said, Defendant's principal swore that subcontracting expenses were incurred during the policy period. *See* Manzo Dec. ¶ 9, ECF No. 46-27.

actually based upon. In fact, Defendant's tax return shows such an error would not affect a finding of gross receipts. "Gross receipts" is listed on line 1a of Defendant's 2017 tax return, on which Defendant reported $5,054,041. *Id.* As Judge Kuntz pointed out, this number is not inconsistent with gross receipts of $6,004,128 during the policy period. A separate line, line 2, asks for "Costs of goods sold." *Id.* Included in this number are costs listed on Form 1125-A, and it is on this form where Defendant listed $1,305,585 in subcontractor costs. *Id.* The next line, gross profits, includes a calculation of gross receipts minus costs of goods sold including the subcontractor costs. Thus, the very tax form Defendant points to shows subcontractor costs are reported separately to the IRS from gross receipts. Therefore, any error in the audit as to subcontractor costs would not appear to impact a calculation of gross receipts. Indeed, as Plaintiff's expert testified in his affidavit, "Cost of Goods Sold is not an adjustment to Gross Receipts allowed by the 2017 IRSD Instructions for the U.S. Corporation income Tax Return 1120. Gross Receipts is the rating basis for the policy not Gross Profits produced…" Franklin Aff. ¶ 7. Any error in not analyzing subcontracting costs would not have affected the accuracy of the audit's determination of gross receipts.

In his affidavit, Mr. Manzo, the Defendant's principal, also points to the fact that the audit stated there were no goods or materials delivered or hauled by employees or owners/operators of B&B during the policy term, but he says that did occur. Manzo Dec. ¶ 10, ECF No. 46-27. However, this argument runs into the same issue as Defendant offers no reason why this would affect the audit's calculation of gross receipts. To the extent Defendant argues these inaccuracies establish the entire report is inaccurate, such conjecture is not enough to create a true issue of material fact that the audit calculated damages to a reasonable certainty.

7

Finally, Defendant presents no evidence of its own that the audit's calculation of gross receipts is incorrect. It does not submit any records of gross receipts for the policy year that contradict Plaintiff's audit. Nor does it present its own separate calculation. It is the Defendant who has access to its gross receipts for the policy period. If it has a different calculation so as to create a true issue of the accuracy of the audit's calculation, that calculation and supporting documentation should have been submitted to the Court. Instead, Defendant merely asks the Court in its brief to "take[] under advisement that B&B contends [*sic*] the amount of premiums owed on the policy…" Def Br., 2.

Thus, the submissions before the Court, including the audit, Mr. Myers' affidavit, Mr. Franklins' affidavit and report, and the fact it is uncontroverted that Mr. Graham offered no concerns about the audit or its calculations establish with reasonable certainty that the Defendant's breach caused a loss of $500,516 in unpaid premiums.

This Court has held, "[i]f adequately explained and credited by the Court, the opinion of an auditor is a sufficient basis for an award of a specific amount of damages." *Trs. Of the Plumbers Local Union No. 1 v. Philip Gen. Construction,* No. 05-CV-1665, 2007 U.S. Dist. LEXIS 99771, *27 (E.D.N.Y. Sept. 12, 2007) (collecting cases) (*adopted by* 2007 U.S. Dist. LEXIS 78632 (E.D.N.Y. Oct. 19, 2007)). Indeed, Courts in this Circuit and New York State courts have routinely found that an audit submitted with the insurance policy and supporting affidavits or testimony are enough to establish damages with reasonable certainty where no material issue has been raised to its accuracy. *See Am. Empire Surplus Lines Ins. Co. v. Uplift Elevator of NY,* No. 20-CV-3246, 2021 U.S. Dist. LEXIS 99927 (S.D.N.Y. May 26, 2021); *Arch Specialty Ins. Co. v. Apco Indus.,* No. 18-CV-4041, 2020 U.S. Dist. LEXIS 186290 (E.D.N.Y. Oct. 5, 2020) (*adopted*); *Cont'l Cas. Co. v. Contest Promotions NY., LLC,* No. 15-CV-501, 2016

8

U.S. Dist. LEXIS 40782 (E.D.N.Y. Mar. 28, 2016); *Evanston Ins. Co. v. Po Wing Hong Food Mkt., Inc.,* 800 N.Y.S.2d 396 (1st Dept. 2005).  Here, Plaintiff has met its burden to establish the audit as a reasonable calculation of its damages based upon a stable foundation, and Defendant has failed to raise a material issue of fact as to the accuracy of that foundation.  Thus, I recommend the Court award $500,516 to Plaintiff in unpaid premiums.

> II.   **Plaintiff is Entitled to Prejudgment Interest at a Rate of 9% Per Annum from August 21, 2018 Until the Date of Judgment**

Plaintiff additionally seeks prejudgment interest on the $500,516 in premiums owed to it at a rate of 9% per annum.

N.Y.S. C.P.L.R. § 5001 provides that, "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract…from the earliest ascertainable date the cause of action existed…Interest upon damages incurred thereafter shall be computed from the date incurred…" N.Y.S. C.P.L.R. § 5001(a)-(b).  "The amount of interest shall be computed…to the date the verdict was rendered or the report or decision was made…" N.Y.S. C.P.L.R. § 5001(c).  The prejudgment interest specified in § 5001 is set at 9% per annum. *See* N.Y.S. C.P.L.R. § 5004.  Under New York law, the awarding of this interest is "generally mandatory upon a sum awarded because of a breach of performance of a contract..." *Rhodes v. Davis,* 628 Fed. Appx. 787, 792 (2d Cir. 2015) (quotations omitted).

Plaintiff has submitted evidence that it issued an audit endorsement on August 21, 2018 modifying Defendant's policy and showing Defendant owed $500,516 in additional premiums based on the results of the audit. *See* Myers Aff. ¶ 15; Audit End.  "In New York, a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 402 (1993).  Failure to pay the $500,516 in additional premiums was a

9

breach and so the "earliest ascertainable date" a cause of action would have existed was August 21, 2018. *See also Arch Specialty Ins.,* 2020 U.S. Dist. LEXIS 186290, *15-*17.

Defendant, however, asks that the Court "use its discretion" to set a different date from which prejudgment interest would accrue given that "to no fault of any party, the litigation in this matter…became severely delayed due to the global pandemic…" Def. Br., 2-3. For the proposition that the Court has such discretion, Defendant cites to *Value Wholesale, Inc. v. KB Insurance Co., Ltd.* in which, citing to N.Y. C.P.L.R. § 5001(c), the Court held that the statute granted it "discretion to award interest from a reasonable date from which the cause of action accrued." 2020 WL 7625411, *3 (E.D.N.Y. 2020). However, Defendant's reliance is misplaced.

The Court in *Value Wholesale* held it must set the date interest begins to accumulate based on a reasonable accrual date for the claim. Defendant asks the Court to do something wholly different and create an artificial accrual date due to the global pandemic. Defendant has provided no other date upon which this claim could have accrued, nor does it refute that New York law sets the accrual date in a breach of contract action on the date of the breach.

The Court is not provided the discretion Defendant seeks by New York statute in a case where the relief requested is solely monetary. Instead, N.Y.S. C.P.L.R. § 5001(b) provides, "Interest *shall* be computed from the earliest ascertainable date the cause of action existed…" (emphasis added). "The New York Court of Appeals has construed the use of 'shall' in a statutory provision to be 'mandatory language' that 'speaks in terms implying duty, not discretion.'" *Zivkovic v. Laura Christy, LLC,* No. 17-CV-553, 2022 U.S. Dist. LEXIS 94950 (S.D.N.Y. 2022) (quoting *Syquia v. Bd. Of Educ. Of Harpursville Cent. Sch. Dist.,* 80 N.Y. 2d 531, 536 (1992)); *see also Nat. Res. Def. Council, Inc. v. New York City Dep't of Sanitation,* 83 N.Y.2d 215, 220 (1994) ("The use of the verb 'shall' throughout the pertinent provisions [of the

10

legislation at issue] illustrates the mandatory nature of the duties contained therein"). Indeed, the New York Court of Appeals has held, "As with other contract actions, damages here *must* be based on the accrual date of plaintiff's cause of action." *Brushton-Moira Cent. Sch. Dist. V. Fred H. Thomas Assocs. P.C.,* 91 N.Y.2d 256, 262 (N.Y. 1998) (emphasis added).

Without discretion to set a date for prejudgment interest that is distinct from the date of claim accrual which is the date of the breach and with Defendant having put forward no other argument for reducing the prejudgment interest award, I recommend that the Court grant prejudgment interest at a 9% per annum rate beginning on August 21, 2018 until the date of judgment.

### III.  Plaintiff is Not Entitled to Attorneys' Fees

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 550 (2010).

Plaintiff claims attorneys' fees should be awarded here because Defendant had "no good faith defense." Pl. Br., 6. In support of that contention, Plaintiff points to the fact that "B&B's purported defenses ranged from their claim that some of the gross receipts counted in the audit were for other companies besides B&B, then to their claim that B&B never requested the American Empire policy and had other insurance in place, then to their claim that B&B's accountant who participated in the audit process on B&B's behalf and supplied the documentation to American Empire's auditor was not authorized to do so." *Id.*

Defendant meanwhile asserts that just because Plaintiff was granted summary judgment that does not mean its defenses were baseless. Def. Br., 4. It says its defenses revolved around pertinent questions of fact present at the beginning of the litigation. *Id.* It also points to its active

participation in settlement negotiations in mediation as evidence it did not act in bad faith. *Id.* at 4-5.

"The awarding of attorneys' fees in diversity cases….is governed by state law." *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985).  Under New York law, in a breach of contract action, attorneys' fees are only available where specifically authorized by the contract. *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487 (1989).  Here, there is no allegation that the insurance contract contained such a provision.  Therefore, attorneys' fees should not be awarded.

A district court's inherent powers do allow it to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO Inc.,* 501 U.S. 32, 45-46 (1991).  The Second Circuit has held, "the only prerequisites to a district court imposing monetary sanctions under its inherent power is that a party advanced a colorless claim and did so for improper reasons." *Int'l Techs. Mktg. Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (collecting cases).  Such an award, however, "must be based on clear evidence and must be accompanied by a high degree of specificity in the factual findings." *Mickle v. Morin,* 297 F.3d 114, 125-26 (2d Cir. 2002).

Here, I am not convinced Plaintiff has shown that the Court's inherent powers to sanction a party should be invoked.  Offering numerous alternative defenses does not by itself indicate bad faith.  Nor does raising legal and factual defenses that do not win the day.  Plaintiff has provided no evidence that these defenses were baseless when they were raised, just that they were not winning arguments.

In sum, though Defendant must pay damages in this case, Plaintiff has not supplied the Court with evidence that Defendant's arguments were colorless, improper, and made in bad faith. Thus, damages for Plaintiff's attorneys' fees should not be imposed on Defendant.

## CONCLUSION

For the reasons discussed, I recommend that Court award to Plaintiff $500,516 in damages together with 9% interest per annum on that amount from August 21, 2018 until the date of judgment.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____  
Steven L. Tiscione  
United States Magistrate Judge  
Eastern District of New York

Dated: Central Islip, New York  
　　　　August 19, 2022

13